IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GRETA CRAWFORD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:04-CV-2619-L |
| | § | |
| UNITED STATES OF AMERICA and | § | |
| DEPARTMENT OF HOMELAND | § | |
| SECURITY, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court are Federal Defendants' Motion for Summary Judgment, filed November 8, 2005; Plaintiff's Motion for Leave to Seal Appendix to Plaintiff's Brief in Opposition to Motion for Summary Judgment:  Appendix Documents 14 and 33, filed November 28, 2005; Plaintiff's Motion for Partial Summary Judgment, filed May 5, 2006; and Plaintiff's Unopposed Motion to Continue Trial, filed July 17, 2006.  After careful consideration of the motions, responses, reply, appendices, record and applicable law, the court **grants** Federal Defendants' Motion for Summary Judgment; **grants** Plaintiff's Motion to Seal Appendix to Plaintiff's Brief in Opposition to Motion for Summary Judgment:  Appendix Documents 14 and 33; **denies** Plaintiff's Motion for Partial Summary Judgment; and **denies as moot** Plaintiff's Unopposed Motion to Continue Trial.

I.      **Factual and Procedural Background**

Plaintiff Greta Crawford ("Crawford" or "Plaintiff") filed this action against the United States of America ("United States") and the Department of Homeland Security ("DHS") (collectively "Defendants") on December 9, 2004.  Crawford alleges, among other things, due

process and equal protection violations, negligence, assault, harassment, conspiracy, retaliation and discrimination. The court now sets forth the facts on which it relies to rule on the summary judgment motions. In setting forth these facts, the court applies the standard set forth in the following section.

On May 4, 2002, Crawford, an African-American female, applied for the position of immigration inspector with the DHS. The Office of Personnel Management ("OPM") conducted a background investigation of Crawford and determined that she was ineligible for the position because of "misconduct or negligence in employment" and "criminal or dishonest conduct." Defendants' App. at 22. The investigation revealed that Crawford was previously employed with a law firm. Her former supervisor at the firm told the investigator that Crawford "was prone to explode in tirades of foul language at the slightest provocation and stated that the government was out to get her." *Id*. at 33. The supervisor also stated that she "was asocial and demonstrated aggressive distaste for her co-workers." *Id.* The investigation also revealed that Crawford was arrested and convicted of being drunk in public in June 1996. *Id*. at 16.

The OPM determined that Crawford was unsuitable for the position, provided her specific information as to how it reached its determination, and gave her an opportunity to respond. Crawford responded by letter on February 1, 2003. After reviewing Crawford's response, the OPM issued a final decision that she was unsuitable for employment as an immigration inspector. Crawford appealed this decision to the Merit Systems Protection Board ("MSPB") in June 2003. A hearing was conducted before an administrative law judge ("ALJ") in November 2003. The ALJ upheld OPM's decision. Crawford filed a petition for review of the decision with the MSPB on January 21, 2004. The MSPB denied the petition.

**Memorandum Opinion and Order - Page 2**

Crawford filed this action on December 9, 2004.  She asserted 23 claims against Defendants.[1]

On June 13, 2005, the court dismissed 20 of Crawford's 23 claims.  The remaining claims are

whether: (1) the administrative decision that Crawford is unsuitable for the immigration inspector's

position was arbitrary, capricious, an abuse of discretion, and not supported by substantial evidence;

(2) Defendants violated the Whistleblower Protection Act; and (3) Crawford was subjected to

unlawful discrimination on the basis of her race, sex and disability.

Defendants filed a motion for summary judgment on November 8, 2005.  Defendants contend

that the MSPB correctly ruled that Crawford was unsuitable for the immigration inspector's position,

as there was substantial evidence that Crawford engaged in misconduct or negligence in

---

[1]Crawford's claims are:

1st Claim for Relief: Dismissal of Remaining Agency Charges and Finding of Suitability;
2nd, 3rd and 4th Claims for Relief: Due Process Deprivations and/or Failure to Adhere to Regulatory Provisions and Prohibited Practices and Denial of Confrontation and Cross-Examination;
5th Claim for Relief: Retaliation for Whistleblowing;
6th Claim for Relief: Discrimination;
7th Claim for Relief: Negligence;
8th, 9th and 10th Claims for Relief[:] Right to Privacy and Contempt/Seals and Obstruction of Justice;
11th Claim for Relief: Harassment and Intimidation;
12th Claim for Relief: Conspiracy;
13th Claim for Relief: Freedom of Expression;
14th Claim for Relief: Right to Association;
15th Claim for Relief: Equal Protection;
16th and 17th Claim[s] for Relief: Interference with Business Relations, and Injury to Reputation;
18th Claim for Relief: Assault;
19th Claim for Relief: Abuse of Process;
20th Claim for Relief: Intentional Infliction of Emotional Distress;
21st Claim for Relief: Malicious Prosecution;
22nd Claim for Relief: Spoliation; and
23rd Claim for Relief: Contract Claims.

*See* Plaintiff's Complaint.

**Memorandum Opinion and Order - Page 3**

employment, and that she had engaged in criminal or dishonest conduct.  The Defendants also contend that summary judgment is proper as to Crawford's whistleblower claim, as she can offer no evidence to substantiate the claim.  Finally, Defendants maintain that Crawford's discrimination claims should be dismissed, as she cannot carry her burden of demonstrating a prima facie case of unlawful discrimination.

Crawford filed her motion for partial summary judgment on May 5, 2006.  Crawford contends that "the negative suitability determination was not supported by substantial evidence, and was arbitrary and not in accord with law or procedure."  Plaintiff's Brief at 1.  She also maintains that  she made protected disclosures in an administrative proceeding and filed suit in January 2001 against the Department of Justice and others asserting violations of law and abuse of authority. Crawford asserts that dissemination of the information she disclosed in the administrative proceeding and lawsuit of January 2001 contributed to the unsuitability determination, and thus is a violation of the Whistleblower Protection Act.  Finally, she contends that there is direct evidence that Defendants engaged in disability discrimination, when, as a part of the investigation, OPM considered her mental health instead of her character or conduct.  She further asserts that as a result of OPM's actions she suffered disparate treatment, and that she was discriminated against because of her race, gender and disability.  The court now considers the motions.

## II.    **Summary Judgment Standard**

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v.*

*Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986); *Ragas,* 136 F.3d at 458.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *Matsushita,* 475 U.S. at 586.  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871 (1994).  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Ragas,* 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.; see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws

will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.  Disputed fact

issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a

summary judgment motion.  *Id.*  If the nonmoving party fails to make a showing sufficient to

establish the existence of an element essential to its case and on which it will bear the burden of

proof at trial, summary judgment must be granted.  *Celotex,* 477 U.S. at 322-23.

**III.    Analysis**

        **A.    Defendants' Motion for Summary Judgment**[2]

                **1.    Finding of Unsuitability for Immigration Inspector**

Defendants contend that the MSPB correctly ruled that Crawford was unsuitable for the

immigration inspector's position.  They maintain that substantial evidence supports the ALJ's

finding that Crawford was unsuitable because of misconduct or negligence in employment, and that

she had engaged in criminal or dishonest conduct.  Crawford counters that the MSPB's decision was

arbitrary, an abuse of discretion, and unsupported by substantial evidence.

Crawford has asserted both discrimination and nondiscrimination claims.  As such, this is

a "mixed case."  *See Aldrup v. Caldera*, 274 F.3d 282, 285 (5th Cir. 2001).  Judicial review of the

MSPB's decision in a mixed case appeal is governed by 5 U.S.C. § 7703.  The applicable subsection

provides:

> [T]he court shall review the record and hold unlawful and set aside
> any agency action, findings, or conclusions found to be–

---

[2]Crawford maintains that Defendants' motion for summary judgment is premature, as the court never
ruled on her motions for leave to file amended complaints.  This assertion is erroneous.  On February 9, 2006,
the court denied Plaintiff's Motion to Amend Complaint, filed June 7, 2005; and Plaintiff's Motion for Leave
to File Third Amended Complaint/Civil Action, filed October 24, 2005.  On July 25, 2005, Crawford filed
Plaintiff's Motion for Leave to Seal Second Amended Complaint/Civil Action.  A motion for leave to file
a second amended complaint, however, was never before the court.   There is no record that such a motion
was ever filed.

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence;

except that in the case of discrimination brought under any section referred to in subsection (b)(2) of this section, the employee or applicant shall have the right to have the facts subject to trial de novo by the reviewing court.

5 U.S.C. § 7703(c).[3]

"In reviewing the merits of the agency's decision, the court will not disturb its findings if supported by substantial evidence based on the record as a whole." *Byrd v. Campbell*, 591 F.2d 326, 329 (5th Cir. 1979).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The court may not reweigh the evidence or substitute its own judgment for that of the MSPB even if this court finds that the evidence preponderates against the MSPB's decision. *Warncke v. Harris,* 619 F.2d 412, 416 (5th Cir.1980).

---

[3]Subsection (b)(2) provides:

Cases of discrimination subject to the provisions of section 7702 of this title shall be filed under section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16(c)), section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)), and section 16(b) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 216(b)), as applicable. Notwithstanding any other provision of law, any such case filed under any such section must be filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action under such section 7702.

5 U.S.C. § 7703(b)(2).

The court determines that a reasonable person could accept evidence that Crawford had a propensity to "explode in tirades of foul language at the slightest provocation" and stated on occasion that "the government was out to get her, " as relevant evidence of Crawford's conduct in her prior employment at a law firm. *See* Defendants' App. at 33; Plaintiff's App. at 143-44. Such evidence may also be viewed by a reasonable person as evidence of misconduct or negligence in employment. Explosive tirades and the use of foul language is unacceptable conduct for an employee. This inappropriate behavior would hinder other employees in the performance of their duties, create an uncomfortable work environment, and raise concerns regarding Crawford's ability to deal effectively with the public in her position as an immigration inspector.

The DHS's director for hiring determined that, based on this evidence, Crawford was unsuitable for the position of immigration inspector as applicants must "demonstrate that they are mature, reliable, and capable of handling stressful situations." *Id*. at 32. He was concerned regarding Crawford's emotional and mental stability. *Id.* 33. Immigration inspectors are required to carry a firearm, and the DHS hiring director was concerned about Crawford's reaction if she faced a stressful situation while carrying a gun. *Id.* Thus the evidence of Crawford's past behavior at work was relevant and substantial evidence that supported Defendants' conclusion that she was unsuitable for the immigration inspector's position.

Crawford contends that she was wrongfully terminated, and that the law firm had a high turnover rate. She maintains that she was not terminated for misconduct, but left the law firm because she was being harassed and intimidated by third parties. She further maintains that the law firm supervisor's claim that she had societal or psychological issues that prevented her from working is false.

**Memorandum Opinion and Order - Page 8**

Crawford's contentions do not support her burden of showing that the MSPB's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  Other than make allegations and conclusory assertions, Crawford does nothing to address her emotional condition, her explosive tirades, use of foul language, or statements that the government is out to get her.  For example, responding that the law firm had a high turnover rate, or that her supervisor's opinion regarding her psychological condition is false, does nothing to establish that substantial evidence was lacking for the director's or the MSPB's decision that she engaged in misconduct or negligence in employment.

The court finds that Defendants' actions were not arbitrary or capricious, and that the finding of misconduct or negligence in employment was supported by substantial evidence based on the record as a whole.  This court will not reweigh such evidence or substitute its own judgment for that of the administrative law judge, who reviewed all the evidence, or the MSPB which denied Crawford's petition for a review of the ALJ's decision.  The court, therefore, will not disturb the findings.

Likewise, a reasonable person could accept the evidence of Crawford's prior conviction for being drunk in public as relevant evidence that Crawford engaged in criminal or dishonest conduct, and thus was unsuitable for the position of immigration inspector.  Crawford admitted on her application for employment and in her deposition that she was arrested and convicted of the offense. *Id*. at 16, 45-46.  She contends, however, that the DHS should have not considered her prior conviction, as it occurred in 1996.  The DHS hiring director determined that, based on this evidence, Crawford "may not live up to the high standards of conduct required of the position."  *Id.* at 41. Such determination is reasonable.  The finding that Crawford was unsuitable because of criminal

conduct is supported by substantial evidence based on the record as a whole. The court, therefore, will not disturb the finding.

The court determines that the finding of the MSPB that Crawford was unsuitable for the immigration inspector's position, because of misconduct or negligence in employment and criminal or dishonest conduct, is supported by substantial evidence and that decision should be affirmed. There is no genuine issue of material fact that substantial evidence supports the ALJ's finding and the MSPB's decision. Defendants, therefore, are entitled to judgment as a matter of law as to Crawford's claim that the DHS's charges and finding that she is unsuitable for the position of immigration inspector is arbitrary and capricious and unsupported by substantial evidence.

## 2.       Plaintiff's Whistleblower Protection Act Claim

Defendants contend that Crawford offers no evidence to substantiate her claim that the decision that she was unsuitable for the immigration inspector's position was in retaliation for her filing a lawsuit against the federal government in January 2001. They maintain that Crawford cannot demonstrate that her 2001 lawsuit was a contributing factor in the decision that she was unsuitable for the position.

The Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2302, prohibits a governmental agency from taking an adverse personnel action against an employee or applicant for employment because of disclosure of information which the employee believes evidences a violation of law or gross mismanagement of funds. 5 U.S.C. § 2302(b)(8). Pursuant to 5 U.S.C. § 1221(e), the employee or applicant must demonstrate that the disclosure was a contributing factor in the personnel action "through circumstantial evidence, such as evidence that – (A) the official taking the personnel action knew of the disclosure; and (B) the personnel action occurred within a period

of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action." *Id.*

Crawford maintains that she has "raised sufficient allegations to show by a preponderance that the disclosures contributed to the treatment of the Plaintiff and to the suitability determination[.]" Plaintiff's Response at 17. She contends that the DHS's hiring director knew of her lawsuit against the Department of Justice, as it was on her employment application and the background investigator's report. She maintains that the proximity between the time she filed the lawsuit and the time she applied for the immigration inspector's position supports her claim of retaliation in violation of the WPA.

Crawford's allegations, however, are not supported by proof that raises a genuine issue of material fact to meet the requirements of § 1221(e). Specifically, Crawford fails to present competent summary judgment evidence that the disclosure of the 2001 lawsuit against the government was a contributing factor in the finding that she was unsuitable for the position of immigration inspector. She has not identified any person who made the determination that she was unsuitable, knew of the prior lawsuit, or retaliated against her for bringing the lawsuit.

In her application for immigration inspector, Crawford stated that in November 2001, she was the Plaintiff in a civil action and that she was making a "claim for damages." Defendants' App. at 18. She listed the "names of parties involved" as "multiple." *Id.* No other information regarding the lawsuit was provided. The investigator's report merely states, "In 11/01 subject was trying to sue some people in the New Orleans, LA courts. Subject refused to discuss the details of the case. Crawford stated that the records are sealed. No other information was stated on the matter." Plaintiff's App. at 132. Such evidence is woefully insufficient to support her claim that the lawsuit

**Memorandum Opinion and Order - Page 11**

was disclosed to the hiring director, and that the disclosure contributed to the director's determination that she was unsuitable for the immigration inspector's position.

Based on the state of the record, there is no evidence, circumstantial or otherwise, that the hiring director, or other official taking the personnel action, *knew* that Crawford allegedly made a disclosure evidencing a violation of the law or mismanagement of funds.  Accordingly, any alleged disclosure by Crawford could not have possibly contributed to the decision that she was unsuitable for the immigration inspector's position.  Crawford has thus failed to raise a genuine issue of material fact as to her whistleblower claim.  As Crawford has not met her burden of establishing this claim, Defendants are entitled to judgment as a matter of law.

### 3.    Plaintiff's Race Discrimination Claim

Defendants assert that Crawford has not carried her burden of demonstrating a prima facie case of unlawful discrimination.  Specifically, they assert that there is no evidence or allegation that the person selected for the immigration inspector's position was outside Crawford's protected class; and no evidence that Defendants' employment practices resulted in a disparate impact on African-Americans.  Defendants maintain that they had legitimate, nondiscriminatory reasons for not hiring Crawford.  Crawford maintains that there is evidence of under-representation of blacks in the immigration inspector's position.

### a.    Disparate Treatment

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), prohibits employers from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).  A plaintiff can prove a claim of intentional discrimination

by either direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000); *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir.), *cert. denied,* 525 U.S. 1000 (1998). "Direct evidence" is "evidence which if believed, proves the fact [in question] without inference or presumption." *Fabela v. Socorro Indep. Sch. Dist.,* 329 F.3d 409, 415 (5th Cir. 2003) (citations omitted). If there is no direct evidence, then a plaintiff must rely on the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973), to create a presumption of intentional discrimination.[4] *See also Byers v. Dallas Morning News, Inc.,* 209 F.3d 419, 425 (5th Cir. 2000).

To create such a presumption, Crawford must establish a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. To establish a prima facie case, she must prove that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was not hired; and (4) the position was given to someone outside the protected class; or in the case of disparate treatment, show that others similarly situated were treated more favorably. *Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2005); *Okeye v. The Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 512-513 (5th Cir. 2001). If Crawford meets her burden of establishing a prima facie case, then the burden shifts to Defendants to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. If Defendants meet their burden, Crawford must prove by a preponderance of the evidence that Defendants' stated reasons are merely a pretext for discrimination. *Id.* at 804; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

---

[4]Neither party argues that this is a "mixed motive," as opposed to a "pretext case." Accordingly, the court need not consider whether the Supreme Court's decision in *Desert Palace, Inc. v. Costa,* 539 U.S. 90, (2003), or the Fifth Circuit's decision in *Rachid v. Jack in the Box, Inc.,* 376 F.3d 305 (5th Cir.2004), will affect this case.

**Memorandum Opinion and Order - Page 13**

Regarding her race discrimination claim, Crawford offers no competent summary judgment evidence that someone outside her protected class was hired instead of her for the position of immigration inspector; or that she was treated less favorably than other applicants. Crawford admitted in her deposition that she does not know whom was hired for the position. Defendants' App. at 51. She maintains, however, that there is direct evidence of discrimination "such as an investigator's surprise at the race of [her] boyfriends, and the DHS's belief that the race of the Board judge affected the outcome." Plaintiff's Response at 25. The court does not know the import of this statement by Crawford; however, even if the investigator was surprised that Crawford's boyfriend was not Black, this is not direct evidence of racial discrimination because, even if believed, it does not prove intentional discrimination without inference or presumption. Moreover, this court cannot infer, without more, that "surprise" would transform conduct into race discrimination.

Viewing all inferences drawn from the factual record in the light most favorable to Crawford, the court determines that she has not come forward with competent summary judgment evidence of the existence of a genuine issue of material fact as to this claim. She merely offers conclusory allegations, unsubstantiated assertions, and unsupported speculation. Crawford cannot establish that someone outside of her protected class was hired for the position of immigration inspector, or that other similarly situated applicants were more favorably treated. Thus she cannot establish a prima facie case of race discrimination.

Even if the court were to determine that Crawford establishes a prima facie case of discrimination based on race, Defendants have articulated legitimate, nondiscriminatory reasons for the finding that Crawford was unsuitable for the position. Specifically, Crawford engaged in misconduct in employment and criminal conduct. Explosive tirades, the use of foul language, and

a prior conviction for being drunk in public can be viewed as  unacceptable conduct sufficient to deny employment.  The hiring director believed that such inappropriate behavior demonstrated that Crawford was not mature, reliable, or capable of handling stressful situations.  Crawford offers no competent summary judgment evidence that Defendants' stated reasons are merely a pretext for discrimination.  The court therefore determines that there is no genuine issue of material fact as to Crawford's race disparate treatment claim, and Defendants are entitled to judgment as a matter of law as to these claims.

**b.      Disparate Impact**

A disparate impact claim arises when an employer's otherwise neutral policy has a "significantly disproportionate impact" on a protected class. § 2000e-2(k)(1)(A)(i); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425 (1975).  Disparate impact claims do not require proof of intent to discriminate. *Munoz v. Orr,* 200 F.3d 291, 299 (5th Cir.), *cert. denied,* 531 U.S. 812 (2000).  Instead, they focus on facially neutral employment practices that create such statistical disparities disadvantaging members of a protected group that they are "functionally equivalent to intentional discrimination." *Id.* (quoting *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 987 (1988)).  The evidence must focus on the degree of statistical disparity between protected and non-protected workers, and the burden is on the plaintiff to conduct a systematic analysis of those employment practices and present evidence in order to establish his or her case.  *Black Fire Fighters Ass'n v. City of Dallas,* 905 F.2d 63, 66 (5th Cir.1990).

To establish a prima facie case of discrimination based on disparate impact, a plaintiff must "(1) *identify* the challenged employment practice or policy, and pinpoint the defendant's use of it; (2) demonstrate a disparate *impact* on a group that falls within the protective ambit of Title VII; and

(3) demonstrate a *causal relationship* between the identified practice and the disparate impact."
*Gonzalez v. City of New Braunfels, Texas*, 176 F.3d 834, 839 n.26 (5th Cir. 1999) (emphasis in
original); *see also* 42 U.S.C. § 2000e-2(k)(1)(A)(i)(2003).  If that showing is made, the employer
must then demonstrate that "any given requirement [has] a manifest relationship to the employment
in question," in order to avoid a finding of discrimination.  *Griggs v. Duke Power Co.*, 401 U.S. 424,
432 (1971).  Even in such a case, however, the plaintiff may prevail, if she shows that the employer
was using the practice as a mere pretext for discrimination.  *Connecticut v. Teal,* 457 U.S. 440, 446-
47 (1982).  A showing that another employment practice would serve the employer's legitimate
interests without a similar undesirable racial effect is evidence of pretext.  *Albemarle,* 422 U.S. at
425.

A plaintiff can establish a prima facie case of disparate impact by showing that the method
for selecting applicants for hire results in a racial pattern significantly different from that of the pool
of applicants.  *See Hazlewood School Dist. v. United States*, 433 U.S. 299, 308 (1977)*.*  Disparate
impact claims necessarily rely heavily on statistical evidence.  *Munoz*, 200 F.3d at 300.  Statistical
discrepancies must be significant to establish a prima facie case.  *Frazier v. Garrison Indep. Sch.
Dist.*, 980 F.2d 1514, 1524 (5th Cir. 1993).  "A plaintiff may use statistical as well as non-statistical
evidence in establishing a prima facie case of disparate impact."  *Page v. U.S. Industries, Inc.*, 726
F.2d 1038, 1053 (5th Cir. 1984).

Crawford contends that Defendants' methods of conducting background investigations is the
employment practice or policy that resulted in disparate impact.  She maintains that the investigators
have "unbridled discretion" in their manner of collecting information and the sources from which
the information is obtained.  Plaintiff's Response at 24.  Crawford contends that investigators are

not properly trained to discern between valid and marginal evidence, and therefore, "these [employment] practices will produce any workforce the fabricator desires, including one based on subconscious stereotypes and prejudices." *Id.*

Defendants contend that Crawford fails to establish a prima facie case of disparate impact, as she offers no specific evidence that their methods of conduction background investigations has a disparate impact on a protected group. Defendants also maintain that their practice of conducting background investigations for potential hires is a business necessity, and not discriminatory.

Crawford asserts that there are "disparities between the general population, and the persons hired into the position." She offers as evidence documents titled, "Occupation 1816 - Immigration Inspection Employees as of December 200[1], 2002, and 2003 Race/National Origin and Gender Counts Source: Central Personnel Data File." Plaintiff's App. at 218; and "Statistics about Minorities in the Profession from the Census." *Id.* at 219, 220. Pursuant to these documents, Blacks or African-American made up 12.3% of the population according to the 2000 Census. *Id.* at 220. According to the documents, in 2001, there were 2,117 immigration inspection employees, 223 of which were "Black, not of Hispanic origin." *Id.* at 218. Thus, more than 10% of the immigration inspection employees were Black. In 2001, there were 460 female immigration inspection employees, which is more than 21% of the inspection employees. Further, slightly more than 7% of the immigration inspection employees were Black as of 2002 and 2003. Slightly more than 23% of the employees were female in 2002 and 2003.

The court concludes, however, that Crawford fails to provide the proper statistical analysis for determining a disparate impact claim. Her statistics cite to the entire population rather than the applicant or labor pool and the applicants hired. "When special qualifications are required to fill

particular jobs, comparisons to the general population (rather than to the smaller group of individuals who possess the necessary qualifications) may have little probative value." *Hazlewood*, 433 U.S. at 308, n.13.  Thus, the relevant statistical pool for demonstrating discriminatory exclusion must be the number of Blacks qualified for the immigration inspector's position.  *See id.; see also Johnson v. Transportation Agency, Santa Clara County*, 480 U.S. 616, 651-52 (1987).  The statistics provided by Crawford do not show a disparity between the applicant or labor pool and the applicants hired.  The court, therefore, cannot rely on these statistics as evidence of a disparity to establish racial discrimination.  Moreover, even if the court were to rely on these statistics, the court finds that there are no significantly disproportionate disparities between the general population, and the persons hired into the immigration inspector's position based on race.

Crawford also submitted evidence that shows that in 2002, of the 233 applicants in Texas hired for the immigration inspector's position, 13 were African-American, slightly more than 5%. Her documents of the applicant pool, however, do not include a designation of race, and therefore are not helpful to the court in its determination of statistical disparity with respect to race between the number of applicants and actual hires.  Moreover, even if the court were to accept these statistics as evidence of a significantly disproportionate impact on African-Americans, Crawford fails to demonstrate *how* the methods of conducting background investigations have a disparate impact on African-Americans; or demonstrate a *causal relationship* between the methods of background investigations and the disparate impact.   Further, Defendants have shown that background investigations for new hires are  a business necessity.  An immigration inspector "performs the full range of inspection, examination, processing and law enforcement duties regarding persons seeking to enter the United States from foreign locations."  Plaintiff's Supplemental App. at 31.  She

"[m]akes arrests and takes custody of arrested persons and detains (through the use of appropriate physical constraints) or arranges for detention.  In some cases, transports aliens to jails or detention facilities."  *Id.*  Among other things, an immigration inspector  must have the "[a]bility to observe and detect unusual conditions, and make accurate judgments and prompt decisions to enforce U.S. immigration and customs laws, and to examine evidence and testimony to establish complex relationships between individuals and organizations involved in attempts to violate laws." *Id*. at 32.

Stanley Johnson, a director for DHS, describes the immigration inspector's position as follows:

> Immigration Inspectors are the first United States officials that approximately 300 million persons who enter the United States annually will see upon their arrival.  The key responsibility of an Immigration Inspector is to prevent ineligible persons from entering the United States.  Immigration Inspectors conduct inspections of all classes of applicants for admission to the United States.  On the basis of their evaluation of information developed through interrogation and observation of applicants and examination of documents for validity and adequacy, they must determine eligibility for admission and take action to admit or exclude as appropriate.  Immigration Inspectors make secondary (more detailed) inspections of applications referred from the initial inspector requiring more intensive questioning and study of citizenship, travel/entry documents, and other information. . . . Inspectors are also required to carry a firearm at all times as well as other instruments by which they may administer non-deadly force. . . . [Applicants must] demonstrate that they are mature, reliable, and capable of handling stressful situations.  In particular, there must be sufficient evidence for me to conclude that an applicant can be trusted to appreciate the seriousness of their responsibility as an Immigration Inspector.  Furthermore, because Immigration Inspectors must exercise good judgment and make instantaneous decisions in high stress situations regarding apprehensions and use of force, [ ] applicant[s] must be able to demonstrate through their previous behavior that they are able to think clearly in stressful situations and are emotionally stable.

Defendants' App. at 31-32.  Based on these listed job responsibilities, it is clear to the court that a background investigation is necessary for the determination of an applicant's suitability for such a position; and the court is convinced that there is not a more desirable employment practice that would serve DHS's legitimate interest with respect to the hiring of persons as immigration inspectors.  Defendants have rebutted any prima facie showing of disparate impact by showing that the challenged employment practice is a business necessity.  *See Griggs v. Duke Power Co.,* 401 U.S. 424, 43 (1973).  Defendants have also demonstrated that the use of background investigations is not a pretext for discrimination.  Defendants are therefore entitled to judgment as a matter of law on Crawford's claim of disparate impact based on race.

### 4.    Plaintiff's Sex Discrimination Claim

Defendants assert that Crawford has not carried her burden of demonstrating a prima facie case of unlawful sex discrimination, as she presents no evidence that a male applicant was hired instead of her for the immigration inspector's position.  They contend that there is no evidence that their employment practices resulted in a disparate impact on females.  Defendants also maintain that they had legitimate, nondiscriminatory reasons for not hiring Crawford.  Crawford maintains that there is evidence of under-representation of women in the immigration inspector's position.

a.      **Disparate Treatment**

To establish a prima facie case of sex discrimination, Crawford must prove: (1) that she was a member of a protected group; (2) that she applied for a position for which she was qualified; (3) that she was rejected; and (4) that after she was rejected, the employer hired or continued to seek a member of the opposite sex for the job. *See Jones v. Flagship Intern.*, 793 F.2d 714, 724 (5th Cir. 1986) (citing *McDonnell Douglas Corp.,* 411 U.S. at 802.).   If Crawford meets her burden of establishing a prima facie case, then the burden shifts to Defendants to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802.  If Defendants meet their burden, then Crawford must prove by a preponderance of the evidence that Defendants' stated reasons are merely a pretext for discrimination.  *Id.* at 804; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Defendants contend that Crawford's sex discrimination cause of action based on the theory of disparate treatment fails for a lack of evidence.   The court agrees.   Similar to her race discrimination claim, Crawford offers no competent summary judgment evidence that she was rejected because of her gender, and that Defendants hired a member of the opposite sex for the position of immigration inspector; or that she was treated less favorably than male applicants. Crawford admits that she does not know whom was hired for the position.  She merely offers conclusory allegations, unsubstantiated assertions, and unsupported speculation that a male was hired instead of her. Thus she cannot establish a prima facie case of sex discrimination, and she has not come forward with competent summary judgment evidence of the existence of a genuine issue of material fact to defeat summary judgment.

**Memorandum Opinion and Order - Page 21**

Even if the court were to determine that Crawford established a prima facie case of sex discrimination, Defendants have articulated legitimate, nondiscriminatory reasons for the finding that Crawford was unsuitable for the position – misconduct in employment and criminal conduct.[5] Crawford offers no competent summary judgment evidence that Defendants' stated reasons are merely a pretext for discrimination. The court therefore determines that there is no genuine issue of material fact as to Crawford's gender disparate treatment claim, and Defendants are entitled to judgment as a matter of law as to this claim.

### b.      Disparate Impact

Crawford provides a document titled "Profile of General Demographic Characteristic for Texas: 2000." Plaintiff's Supplemental App. at 22. According to this document, the State of Texas had a population of 20,851,820 in 2000. *Id.* Females made up 10,498,910, or 50.4% of the Texas population. *Id.* According to Crawford's documentation, of the 233 immigration inspectors hired in Texas in 2002, 66 or 28% were female. *Id.* at 13-17. Crawford provides no evidence of the gender makeup of the applicant pool for this same time period. As Crawford fails to provide the makeup of the applicant pool, the court cannot make a determination regarding a statistical disparity between selected applicants and the applicant pool. *See Hazlewood*, 433 U.S. at 308; *Johnson,* 480 U.S. at 651-52. Accordingly, this claim fails as a matter of law.

Crawford has identified Defendants' methods of conducting background investigations as the challenged employment practice. Thus even if the court were to accept these statistics as evidence of a significantly disproportionate impact on females, Crawford fails to: (1) demonstrate

---

[5]Crawford's unsuitability equally applies to her lack of qualifications for the position. Although Defendants did not contend *per se* that Crawford was unqualified for the position, the court determines that they have effectively placed her lack of qualifications in issue by asserting that she was "unsuitable" for the position of immigration inspector.

**Memorandum Opinion and Order - Page 22**

*how* the methods of conducting background investigations have a disparate impact on females; (2) demonstrate a causal relationship between the methods of background investigation and the disparate impact; or (3) show that the Defendants' methods of conducting background investigations is not a business necessity but merely a pretext for discrimination.   For this reason, and that previously stated, the court determines that Crawford fails to establish a genuine issue of material fact as to her gender disparate impact claim, and Defendants are entitled to judgment as a matter of law on this claim.

### 5.       Plaintiff's Disability Discrimination Claim

Crawford contends that the decision that she was not suitable for the immigration inspector's position was based on disability.   She also contends that "though the Plaintiff is not disabled, she is clearly regarded as disabled, and substantially limited in major life activities such as learning and working."   Plaintiff's Response at 19.   She also contends that "Plaintiff is regarded as psychologically impaired and unable to work and learn . . . , and she was treated as such in the report, affidavit and decision."   *Id.* at 20.   She thus asserts that the decision that she was unsuitable for the position was discriminatory.

There is a question whether this court has jurisdiction over Crawford's Americans with Disabilities Act ("ADA") claim.   Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim.   *See Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).   Absent jurisdiction conferred by statute, they lack the power to adjudicate claims and must dismiss an action if it appears that subject matter jurisdiction is lacking.   *See Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)).   A federal court

**Memorandum Opinion and Order - Page 23**

has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *See Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("federal court may raise subject matter jurisdiction *sua sponte*").

At first glance, it might appear that the court does not have subject matter jurisdiction. The ADA is an antidiscrimination statute designed to remove barriers which prevent qualified individuals with disabilities from enjoying employment opportunities available to persons without disabilities. *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 161 (5th Cir.), *cert. denied*, 519 U.S. 1029 (1996). The ADA provides: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines "covered entity" as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). The term "employer," however, does not include "the United States, a corporation wholly owned by the government of the United States, or an Indian tribe." 42 U.S.C. § 12111(5)(B)(i).

Defendants are the United States and one of its agencies, the DHS, who are specifically excluded as employers. Because there are no *threshold* facts to decide, it would appear as a matter of law that this lawsuit cannot be maintained against Defendants. The inquiry, however, does not end here. In a recent case, the Supreme Court overruled the Fifth Circuit, which had held that the numerosity requirement for an employer to be covered under Title VII was jurisdictional. *Arbaugh*

*v. Y & H Corp.,* 546 U.S. _____, 163 L. Ed.2d 1097 (2006).  In providing guidance to determine

whether a court has subject matter jurisdiction, the Supreme Court stated:

> If the Legislature clearly states that a threshold limitation on a
> statute's scope shall count as jurisdictional, then courts and litigants
> will be duly instructed and will not be left to wrestle with the issue.
> But when Congress does not rank a statutory limitation on coverage
> as jurisdictional, courts should treat the restriction as non-
> jurisdictional in character.

*Id.,* at 1110 (footnotes and internal quotes and citations omitted).  In light of this directive from the

high court, and upon review of the statute, the court sees no indication that Congress ranked or

intended to rank as jurisdictional the exclusion of the United States as a covered entity under the

ADA.  Accordingly, the court determines that it has the power to adjudicated this disability claim.

### a.    Disparate Treatment

A person "may establish a claim of discrimination under the ADA by presenting direct

evidence or by using the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green,*

411 U.S. 792, 802-04 (1973)."  *Seaman v. CSPH, Inc.,* 179 F.3d 297, 300 (5th Cir.1999).  To

establish a *prima facie* case of intentional disability discrimination under *McDonnell Douglas,* a

plaintiff must show that she "(1) suffers from a disability; (2) was qualified for the job; (3) was

subject to an adverse employment action[;] and (4) was replaced by a non-disabled person or treated

less favorably than non-disabled employees."  *Seaman*, 179 F.3d at 300.  The employer then must

articulate some legitimate, nondiscriminatory reason for its action.  *Id.*  If the employer meets this

burden, then the employee must prove that the employer's stated reasons are merely a pretext for

discrimination.  *Id.*

A person is disabled under the ADA if he (1) has a physical or mental impairment that

substantially limits one or more major life activities, (2) has a record of such impairment, or (3) is

regarded as having such an impairment.  42 U.S.C. § 12102(2); *Aldrup,* 274 F.3d at 286.  Major life

activities can include "functions such as caring for oneself, performing manual tasks, walking,

seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i).  "Substantially

limits" means that a person is:

> (1) unable to perform a major life activity that the average person in the
> general population can perform; or (2) significantly restricted as to the
> condition, manner, or duration under which an individual can perform a
> particular major life activity, as compared to the condition, manner, or
> duration under which the average person in the general population can
> perform the same major life activity.

29 C.F.R.§ 1630.2(j)(1); *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 164 n.5 (5th Cir. 1996).

Defendants assert that Crawford has not carried her burden of demonstrating a prima facie

case of unlawful disability discrimination, as she presents no evidence that she was discriminated

against because of a disability, and no evidence that Defendants failed to reasonably accommodate

her because of her disability.  Defendants maintain that there is no evidence that their employment

practices resulted in a disparate impact on persons with disabilities.  They further contend that they

had legitimate, nondiscriminatory reasons for not hiring Crawford.

Crawford contends that the determination that she was unsuitable for the immigration

inspector's position was based on a disability, as the investigation documents referenced her

psychological condition and ill-health.  Plaintiff's Response at 19.  She maintains, therefore, that

although she is not disabled, she is clearly regarded as disabled, and substantially limited in major

life activities such as learning and working.  *Id.*

A person is "regarded as" disabled under the ADA if she:

> (1) has an impairment which is not substantially limiting but which
> the employer perceives as . . . substantially limiting  . . . ; (2) has an
> impairment which is substantially limiting only because of the

attitudes of others towards such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment.

*Rodriguez v. Conagra Grocery Prods. Co.*, 436 F.3d 468, 475 (5th Cir. 2006) (footnote and citation omitted).

Crawford offers no competent summary judgment evidence to meet the standard articulated above. Specifically, she offers no evidence that Defendants regarded her as having a substantially limiting impairment, that this perceived impairment contributed to the decision that she was not suitable for employment, and that a non-disabled person was hired instead of her. Although there is evidence that the hiring director was concerned regarding Crawford's emotional and mental stability, this concern was directed to Crawford's ability to handle stressful situations as it relates to the position of immigration inspector. Such concern does not rise to the level of being regarded as having a substantially limiting impairment that Crawford is unable to perform a major life activity that the average person in the general population can perform; or is significantly restricted as to the condition, manner, or duration under which she can perform a particular major life activity. "[A]n employer does not necessarily regard an employee as having a substantially limiting impairment simply because it believes she is incapable of performing a particular job[.]" *Ellison v. Software Spectrum*, 85 F.3d 187, 192 (5th Cir. 1996). Rather, the employer must regard the individual as significantly restricted in his ability to perform a class or broad range of jobs. *Hamilton v. Southwestern Bell Telephone Co.*, 136 F.3d 1047, 1052 (5th Cir. 1998). Crawford has thus failed to produced sufficient summary judgment evidence to create a genuine issue of material fact that Defendants regarded her as disabled. Also, the record is devoid of any competent summary

judgment evidence that Defendants have regarded Crawford as having a substantially limiting impairment with respect to her ability to learn.

Even if the court were to determine that Crawford establishes a prima facie case of discrimination based on a disability, Defendants have articulated legitimate, nondiscriminatory reasons for finding that Crawford was unsuitable for the position.  The finding of misconduct or negligence in employment was based on Crawford being terminated for inappropriate behavior in the workplace.  Specifically, her propensity to explode into tirades, use foul language, and make repeated statements that the government was out to get her.  The hiring director determined that such behavior was not compatible with the performance of the duties of an immigration inspector.  Further, Crawford's prior conviction for being drunk in public establishes that she engaged in criminal or dishonest conduct.  Crawford fails to offer any summary judgment evidence that such reasons are merely a pretext to disability discrimination.

Considering the record as a whole and drawing all reasonable inferences in Crawford's favor, the court determines that Crawford has failed to raise a genuine issue of material fact to establish a prima facie claim of disability discrimination.  Accordingly, Defendants are entitled to judgment as a matter of law on Crawford's disparate treatment claim based on disability.

### b.       Disparate Impact

Crawford asserts that Defendants' practice of "using opinions of untrained persons and strangers" regarding her medical or emotional condition had a disparate impact on *her*.  Plaintiff's Response at 22.  She further states that there is substantial statistical disparity, as no disabled persons were hired as an immigration inspector in 2002.  Defendants contend that Crawford does not demonstrate how this practice had an impact on persons with disabilities in general.

**Memorandum Opinion and Order - Page 28**

Crawford produces no statistical evidence of disabled persons in the applicant pool. She also fails to demonstrate a causal connection between the Defendants' methods of conducting background investigations and alleged use of "using opinions of untrained persons and strangers" regarding medical or emotional conditions, and the alleged disparate impact. The court finds that Crawford produces no evidence that this practice had a disparate impact on disabled persons in general. Thus Crawford is actually making a disparate treatment claim regarding her alleged disability. The court therefore determines that Crawford has not produced competent summary judgment evidence sufficient to establish a prima facie case of disparate impact as to disability and thus cannot defeat summary judgment on this issue. Moreover, even if the court were to conclude that Crawford established a prima facie case of disability discrimination based on disparate impact, Crawford fails to demonstrate, or create a genuine issue of material fact, that the Defendants' methods of conducting background investigations is not a business necessity but merely a pretext for discrimination. Accordingly, Defendants are entitled to judgment as a matter of law as to Crawford's disability disparate impact claim.

### c.    Reasonable Accommodation

Defendants maintain that they are entitled to summary judgment as to Crawford's claim that Defendants refused to reasonably accommodate her disability, as she: (1) denied in her deposition that she was disabled, so there was no disability to reasonably accommodate; (2) fails to identify what accommodation she believes DHS should have made, and therefore there is no indication whether the proposed accommodation would have been reasonable; and (3) provides no evidence demonstrating that she requested an accommodation of a disability from DHS. Defendants further assert that, as to Crawford's contention that she is regarded as having a disability, employers are not

required to reasonably accommodate individuals regarded as disabled, only those who actually are disabled.

Crawford counters that she could not request an accommodation, as she "needed notice of why she was thought to have failed the medical exam."  Plaintiff's Response at 23.  She further contends that "[a]ny reasonable person would retain an accommodation claim in light of the relentless INS claims of mental deficiency, and in light of the impermissible changing of charges."  *Id.*  Finally she asserts, "The Plaintiff may make the claim of accommodations discrimination where the employer mysteriously, directly and indirectly alleged but did not explain an illness that prevents the hiring of the Plaintiff anywhere."  *Id.*  Crawford offers no authority to support her contentions.

The ADA provides that employers are liable for failing to make reasonable accommodations to qualified individuals with known physical or mental limitations, unless the employer demonstrates that the accommodation imposes undue hardship on the operation of its business. 42 U. S. C. § 12112(b)(5)(A).  In order to bring a successful ADA claim based on failure to provide reasonable accommodation, "an employee must prove that the employer knew of the employee's substantial physical [or mental] limitation." *Gammage v. West Jasper Sch. Bd. of Educ.,* 179 F.3d 952, 955 (5th Cir. 1999).  The ADA does not require an employer to assume that an employee with a disability suffers from a limitation.  "[I]t is incumbent upon the ADA plaintiff to assert not only a disability, but also any limitation resulting therefrom."  *Id.*  She is also required to demonstrate that she requested an accommodation and that an accommodation of her disability is reasonable.  *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d at 165; *Riel v. Electronic Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996).  Further, "an employer need not provide reasonable accommodation to an employee who does not suffer from a substantially limiting impairment merely because the employer thinks the

employee has such an impairment." *Newberry v. East Tex. State Univ.,* 161 F.3d 276, 280 (5ᵗʰ Cir. 1998).  In other words, "the duty to make a reasonable accommodation arises only when the individual is disabled; no such duty arises when the individual merely is 'regarded as' being disabled as defined under the ADA." *Cannizzaro v. Neiman Marcus, Inc.,* 979 F.Supp. 465, 475 (N.D.Tex.1997).

Crawford offers no summary judgment evidence that Defendants knew of any substantial physical or mental limitations, or that she requested an accommodation.  Further, as Crawford asserts that she is not disabled, but only regarded by Dependants as disabled, Defendants are not required to accommodate her.  Crawford thus fails to raise a genuine issue of material fact as to her claim that Defendants discriminated against her by refusing to reasonably accommodate her disability, and Defendants are entitled to judgment as a matter of law on this claim.

> **B.**     **Plaintiff's Motion for Partial Summary Judgment**

In her motion for partial summary judgment, Crawford reasserts her claims that: (1) substantial evidence does not support the DHS's determination that she was unsuitable for the immigration inspector's position; (2) Defendants' action of not selecting her for the position was a result of her filing suit against the federal government in 2001; and (3) she was not hired for the position because of her disability, race, and gender.  These are the same claims that the court already addressed in disposing of Defendants' motion for summary judgment.  As the court has determined that Defendants are entitled to judgment as a matter of law on all of these claims, holding that Crawford has presented evidence to show that there is no genuine issues of material fact as to *her* claims would be wholly inconsistent with the court's prior determination.  Accordingly, Crawford's motion for partial summary judgment will be denied.

**Memorandum Opinion and Order - Page 31**

### C.    Plaintiff's Motion to Seal

Crawford requests the court to seal her Appendix documents 14 and 33, as they contain confidential, personnel, and private medical information.  Alternatively, Crawford seeks to have the entire record sealed. As the court has previously ordered Crawford's complaint, appendices, and various other documents and pleadings in this case sealed; and Defendants do not object or respond to Crawford's motion to seal, the court determines that the motion to seal should be granted as to Appendix documents 14 and 33.

## IV.    Conclusion

For the reasons stated herein, the court determines that no genuine issue of material fact exists regarding any claim asserted by Plaintiff.  Accordingly, the court **grants** Federal Defendants' Motion for Summary Judgment; **affirms** the decision of the MSPB; **denies** Plaintiff's Motion for Partial Summary Judgment; **grants** Plaintiff's Motion for Leave to Seal Appendix to Plaintiff's Brief in Opposition to Motion for Summary Judgment:  Appendix Documents 14 and 33; and **denies as moot** Plaintiff's Unopposed Motion to Continue Trial.  Judgment will issue by separate document as required by Fed. R. Civ. P. 58.

**It is so ordered** this 2nd day of August, 2006.

Sam A. Lindsay
United States District Judge